[No. 12574. In Bank. — June 6, 1888.]

CALIFORNIA CENTRAL RAILWAY COMPANY, RESPONDENT, v. GEORGE F. HOOPER ET AL. DAVID L. GARDNER ET AL., APPELLANTS.

EMINENT DOMAIN — CONDEMNATION OF RIGHT OF WAY FOR RAILROAD — CONSOLIDATION OF RAILROADS — SUBSTITUTION OF NEW COMPANY. — Where a railroad corporation, pending a proceeding instituted by it for the condemnation of land for the use of its road, becomes consolidated with other similar corporations, the new corporation thus created may be substituted in place of the original plaintiff, and thereafter the proceeding may be prosecuted in its name and for its benefit.

ID. — SPECIAL ISSUE — RECALLING JURY — DISCRETION. — In such a proceeding, it is not an abuse of discretion for the court to refuse to recall the jury, after they had retired for deliberation, for the purpose of submitting to them a special issue which is embraced within another issue already submitted to them.

ID. — INSTRUCTION — REVIEW OF — ABSENCE OF EVIDENCE. — In the absence of the evidence, the relevancy and propriety of an instruction which the court refused to give cannot be reviewed on appeal.

ID. — STATEMENT BY COURT AS TO EFFECT OF EVIDENCE. — Where the court in its instructions states that evidence has been offered tending to prove a particular fact, it will be presumed, in the absence of the evidence, that its effect was as stated by the court.

ID. — NECESSITY AS TO PARTICULAR ROUTE — OTHER ROUTE EQUALLY GOOD. — A particular route, sought to be condemned by a railroad company for the use of its road, is not rendered unnecessary by reason of the existence of another route equally good and convenient both for the property owner and the company.

ID. — DESCRIPTION OF ROUTE — SUFFICIENCY OF. — The complaint in a proceeding to condemn a right of way for a railroad company must contain a description of each piece of land sought to be taken, and whether the

same includes the whole or only part of an entire tract; and the judgment must be so far certain as that the parties, and any ministerial officer who may be called on to enforce it, may know what land is to be taken and paid for. Tested by these rules, the description in the present case, *held,* insufficient.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order refusing a new trial.

The action was brought to condemn a right of way for a railroad. Judgment was entered in favor of the plaintiff, from which, and from an order refusing them a new trial, the defendants David L. Gardner and John R. Bleeker appealed. The further facts are stated in the opinion of the court.

*A. B. Hotchkiss,* for Appellants.

*A. Brunson,* and *John D. Works,* for Respondent.

McKINSTRY, J.—The action was originally brought by the San Diego Central Railroad Company, a corporation, to condemn for a public use certain real property. After the commencement of the action, it was made to appear to the satisfaction of the superior court that the San Diego Central Railroad Company had consolidated all its franchises, properties, rights, and priviliges with several other railroad corporations, and that the consolidation had by articles of agreement incorporated under the name and style of the California Central Railway Company; and thereupon the court ordered that the California Central Railway be substituted as plaintiff in the action, in the place of the San Diego Central Railroad Company. (Civ. Code, sec. 473.)

Of course an order *ex parte,* substituting one person for another as plaintiff, is not conclusive upon the defendant. But here the regularity of the consolidation, as a consolidation, is not denied. It is, however, disputed that, as a matter of law, the new plaintiff acquired

any right to prosecute the action by virtue of the consolidation and order of the court.

The articles of consolidation constituted the new articles of incorporation to be filed. (*Cal. S. R. R. Co.* v. *S. P. R. R. Co.*, 67 Cal. 59.)

It is contended by appellant that when the San Diego Central Railroad Company was amalgamated with other companies, the San Diego Central " died," and the proceedings died with it,—that the cause of action did not survive the existence of the corporation which began it.

The constitution of Ohio of 1851 prohibited special acts of incorporation, and provided, "corporations may be formed under general laws, which [general laws] are subject to alteration or repeal by the legislature."

In *Shields* v. *Ohio,* 95 U. S. 319, it was held: Where a railroad corporation, created by special act, prior to the taking of effect of the constitution of 1851, voluntarily consolidated with another company, under a general law, after the adoption of that constitution, the new corporation created by the consolidation was subject to the provisions of the constitution above referred to, and derived its powers and franchises from the general laws; and accordingly that the new corporation could not charge more than a limited freightage, fixed by an amendment of the general laws, although the consolidated company, created prior to the constitution of 1851, was originally authorized by its charter to charge " reasonable " rates. In that case it was said it was a condition precedent to the existence of the new corporation that the old ones should first surrender their vitality, and submit to dissolution. *Shields* v. *Ohio* is cited by counsel for appellant as bearing upon the present controversy.

Since the organization of the state government of California, corporations have been formed, and legally can only have been formed, under general laws. None of the corporations merged in the California Central had any other powers or franchises than are enjoyed by it.

No such question arises here as was presented in the Ohio case. Whether the consolidation companies ceased to exist for every purpose immediately on consolidation, —whether they did not continue separate as to their creditors (Civ. Code, sec. 473),—is perhaps unimportant here. It is certain that, after the amalgamation, the San Diego Central, as a distinct entity, had no interest in nor right to continue the prosecution of the action by it commenced for the condemnation of private property.

But in authorizing corporations to commence and prosecute proceedings like the present, the state does not transfer to such corporations the exercise of the power of eminent domain. The legislature determines that property taken to be used for certain railroad purposes is taken for a public use. Since the state must act through agents, and as the necessity for taking particular property, and the fixing of just compensation to be paid for it, are *quasi* judicial questions, the legislature authorizes a corporation to bring and prosecute an action to secure a judgment determinative of the necessity, and of the valuation, and formally transferring the use.

While a corporation which brings such an action is the proper party to bring it, because the statute makes it the proper party, its interest in the action is but incidental and subordinate to the main purpose (which alone justifies the proceeding under the constitution), the main purpose being to secure private property, upon just compensation, for a public benefit. In initiating the proceedings, the corporation acts as agent of the state, the legislature having provided the mode for the employment of the power of eminent domain. (*Houghton* v. *Austin*, 47 Cal. 655; *Mahoney* v. *Spring Valley*, 52 Cal. 162.) The legislature, which has power to name the agent, has power to provide for the transmission of the agency during the pendency of an action by a

change of the plaintiff, at least, where, as here, the substituted plaintiff has acquired all the rights, powers, and franchises of the original plaintiff, continues the prosecution of the same action upon the same cause of action, —for the condemnation of the same property for the same public use.

. Nor is anything to the contrary of the foregoing decided in *Mahoney* v. *Spring Valley, supra.* In that case it appeared that on the day of the commencement of an action by a water corporation for the condemnation of certain land and water, the corporation assigned to certain individuals its right and privilege to acquire and condemn the land and water; the assignees agreeing to pay the amount of damages which should be awarded to the owner of the property in the action, and the corporation covenanting to convey to the assignees (or their beneficiary) the land and water after it should be acquired. The assignees took the assignment for "the use and benefit" of the Spring Valley Company. After the assignment the corporation last named conducted the proceedings in the name of the original plaintiff. In that case, even treating the assignment of the right to acquire, etc., as an attempted purchase by the Spring Valley Company, there was no "consolidation" of the two companies, no acquisition by that company of the rights and franchises of the corporation plaintiff. The issue made and tried was the necessity of the taking of the private property for the public use represented by the plaintiff, not for the public use represented by the Spring Valley Company. The court said that the attempt by the plaintiff to transfer the right of acquiring the land and water through the condemnation proceedings was *ultra vires.* *Mahoney* v. *Spring Valley* was an action brought by the owner of the property sought to be condemned, he claiming that he was entitled to recover of the defendant the assessed value of the land and water as appraised in the condemnation proceedings brought

and prosecuted to an alleged judgment by and in the name of the Clear Lake Company; this by reason of any assignment by that company of its right to bring and prosecute the condemnation proceedings to certain individuals, for the use and benefit of the Spring Valley Company. It was held the last-named company could not take an assignment of a right to condemn property not necessary, as must be presumed, to the public use by it represented. Moreover, what was said on the subject was not strictly necessary to the judgment.

The assignment was to individuals, and the statutory proceedings to condemn were commenced by, and could under the particular statute only be prosecuted by, a corporation.

In the case now here, the present plaintiff had acquired in the manner provided by statute the right to represent the public use represented by the original plaintiff, as incidental to its acquisition of the right and franchise of building and operating the same railroad, along the same line, and between the same termini.

Section 385 of the Code of Civil Procedure reads: "An action or proceeding does not abate by the death or any disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue. In case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest. In case of any other transfer of interest, the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding."

As to natural persons, the statute speaks of those who may become disabled as different from those who may die. The last sentence relates to voluntary transfers, or to transfers not brought about by the death or disability of the original party. A corporation "in charge of the

public use for which the property is sought" (Code Civ. Proc., sec. 1243), and which must be styled plaintiff, has an interest in the action,— an interest in securing the easement, and in the control of the property which may be taken for the public use represented by the plaintiff in the action.   The action does not abate by reason of the plaintiff's disability or attempted transfer, in case the transfer is provided for by statute, and the transferee is in all respects the successor to the interest, both so far as the same is direct, and to the extent that the original party had charge of the public use.   Certainly the right of the successor, if the laws intend him to be successor, to prosecute the action, is not affected by the mere circumstance that the original plaintiff becomes disabled or goes out of existence by the process (amalgamation) which operates a transfer of the previous interest of the original plaintiff, and brings the successor into life.

Aside from the direct benefit it will receive in case the property is appropriated to the public use of which it has charge, the very statute which requires the action to be prosecuted in the name of a corporation confers upon it an interest.   The agency is in its nature an office; the corporation is a trustee prosecuting the proceeding primarily for the state, which by its legislature has declared the use to be public.   By permitting a consolidation of the corporation with others, and the creation of a new corporation thereby, the new creature is made a corporation like each of the others.   Aside from the franchise *to be* a corporation, which is the same as that of each of the consolidating companies, it acquires the rights and franchises to build and operate the roads which all the others had the right to build and operate; and with this last, the right to commence or prosecute an action for condemnation of property necessary to the building and operation of each of such roads.

Had the consolidation occurred before the commencement of this proceeding, the present plaintiff could have

begun it; by reason of the subsequent consolidation, it took the place in all respects, so far as this proceeding is concerned, of the original plaintiff.

We are of opinion the court below was authorized to make the order of substitution, and so far the judgment is regular and valid.

A bill of exceptions recites that before the jury *returned* the defendants requested the court to submit the interrogatory to the jury: " Was it necessary for the plaintiff to take any of the Bleeker and Gardner tract for the purpose of its right of way ?" The court did not abuse its discretion in refusing to recall the jury. Beside, the complaint alleged that a portion of block 302 in Middletown was necessary for the right of way. The court found that block 302 in Middletown belonged to these appellants. The court submitted to the jury the question: " Were the lands described in plaintiff's complaint, and sought to be condemned for the right of way, . . . . necessary for such right of way," etc. ?

In the absence of the evidence given before the jury, we cannot pass upon the relevancy and propriety of instruction No. 5, asked by defendants. The instruction immediately following in the transcript was substantially given by the court.

It is urged the court erred in refusing an instruction that if the land described in the complaint " is being condemned for the use and benefit of the Atchison, Topeka, and Santa Fé Railroad Company," etc., the jury should find for defendants. The evidence is not here; and in another instruction the court said: " There is no evidence in the case connecting the Atchison, Topeka, and Santa Fé Railroad Company with this suit, nor any question as to the necessities of that company for these grounds in any way presented by the pleadings."

We have examined the charges claimed by appellants to be violative of section 19 of article 6 of the constitution, and find that they are not charges with respect to

matters of fact. After saying that there was some evidence in the case tending to show that another railroad company had terminal grounds and other facilities for transacting business in the city and on the bay of San Diego, and that the defendants had offered evidence tending to show that a part of the proposed line of plaintiff's railroad might be so shifted as to pass over other lands and make an *equally* good and convenient line of road, the learned judge below said: " The fact that some other company had ample terminal and depot grounds was no reason why the plaintiff should not condemn such lands described in the complaint as the jury should find to be necessary for the construction and operation of its roads; and the fact, if proved, that another equally desirable and convenient line could be had by changing it to another place and passing over other grounds, did not show that the land sought to be taken was not necessary for the use of plaintiff," etc.

The instruction as to the non-effect of evidence of the possessions or property of another company was not erroneous. In the absence of a recital of the evidence, we must presume the evidence offered by the defendant, with regard to another line, tended to prove just what the judge said it tended to prove,—that another line would be "*equally* good and convenient." The code provides that where the land is required for public use, it must be located in a manner compatible with the greatest public good and the least private injury, and subject to the provisions of section 1247. (Code Civ. Proc., sec. 1242.) One of the two lines equally good and convenient for the railroad company may be of greater injury to the land-owner, or may not permit of a proper regulation of the place and manner of making connections and crossings. (Code Civ. Proc., sec. 1247.) If there be two lines equally good and convenient, both for the property owner and railroad company, the fact of the existence of two such lines does not constitute a

reason why neither should be adopted. Even if it should be conceded that in such case the owner of the land over which both lines pass has a right to determine which of the two shall be adopted, there is no pleading or evidence in the transcript before us indicating the defendant's selection of one route rather than another.

It is, however, contended by appellants that there is no certain or sufficient description of the land sought to be taken from them for a way, in the complaint, findings, or judgment.

The Code of Civil Procedure, section 1242, provides that the agent of the state may survey and locate the land sought to be condemned, and that the complaint shall contain a description of each piece of land sought to be taken, and whether the same includes the whole or only a part of an entire parcel. (Sec. 1244.) The value of *each piece* taken is to be fixed by the court, as well as the amount of injury done to the remainder of a tract when a part is taken. The judgment must be so far certain as that the parties, and any ministerial officer who may be called on to enforce the judgment, may know what land is to be taken and paid for.

The complaint herein avers that there is needed land for the right of way, "upon and over Atlantic Street, from the end of said wharf to Spring Avenue, curving easterly, and passing upon and across lots A, B, C, and D of block fifty (50) of said Gray and John's map; thence crossing Spring Street or Avenue, upon and across block 302, in Middletown, as delineated on the map filed herewith, and marked 'Exhibit A,' in the office of the clerk of this court, and more particularly known as the Gardner and Bleeker tract, taking a strip of one hundred feet wide, fifty feet on each side of the center line of said railroad track, as shown on said exhibit A," etc. The findings and judgment refer to the complaint, and contain no further description.

The map brought here is certified by the clerk of the superior court to be a copy of the original on file in his office.

The following is a portion of the map accurately transferred:—

NOTE—The figures "752" appear on the map in red. No part of the map in the transcript is designated as "Middletown." No scale of measurements appears upon it; the points of the compass are not indicated; neither the width of the streets nor the size of the lots or blocks can be ascertained from it; and with respect to land sought to be taken from appellants, no certainty can be arrived at, by an examination of the map, as to its area, limits, or quantity. The complaint, independent of the map, contains no description of the land to be taken from appellants, out of block 302, and by reference to the map is it impossible to determine at what point on Spring or California Street the line of the railroad enters or leaves the block 302 as laid down thereon.

Judgment and order reversed, and cause remanded for further proceedings.

SEARLS, C. J., THORNTON, J., MCFARLAND, J., PATERSON, J., and SHARPSTEIN, J., concurred.