[No 12623.    In Bank. — December 29, 1891.]

## SPRING VALLEY WATER WORKS, Respondent, v. MARY DRINKHOUSE, Appellant.

Eminent Domain — Water Companies — Condemnation of Reservoir Site. — Under sections 1238 and 1239 of the Code of Civil Procedure, a corporation organized and existing under the laws of the state, for the purpose of supplying the inhabitants of an incorporated city with water, may exercise the right of eminent domain for the acquisition of land as part of a reservoir site, which is claimed by the corporation to be necessary for it in the prosecution of the business for which it was created.

Id. — Necessity — Question of Fact — Burden of Proof — Reasonable Requirement. — Before land can be taken for a public use, it must appear that the taking is necessary for such use, and such necessity is a question of fact to be determined by the court or jury, in view of all the evidence in the case, the burden of proof being upon the corporation seeking the condemnation, to show that the land is reasonably required for the purpose of effecting the object, or carrying on the business for which the corporation was organized.

Id. — Future Probable Needs of Public. — In determining whether land is reasonably required for a reservoir site, by a water company organized to supply a city with water, not only the present demands of the public upon the water company, but those which may be fairly anticipated on account of the future growth of the city, are to be considered.

Id. — Evidence — Value of Land — Purchase of Other Tracts — Offers. — In proceedings to condemn land for a public use, the testimony of a witness for the defendant as to how much the plaintiff had paid per acre for other tracts of land, or as to offers made by the plaintiff to purchase such tracts, is not admissible upon his direct examination, but only by way of cross-examination for the purpose of testing the fairness or honesty of an opinion which the witness may have given upon his direct examination in relation to the value of the property involved in the action.

Id. — Value of Land for Reservoir Purposes. — In an action to condemn land for a reservoir site, where the land sought to be condemned, by reason of its situation and because it is part of a basin adapted for reservoir purposes, would be regarded as more valuable by purchasers generally than if it did not possess such advantages of location and adaptability for use as a reservoir, the plaintiff should be permitted to show, by the testimony of competent witnesses, the value of the land for reservoir purposes.

Id. — Market Value — Necessities of Plaintiff — Value to Plaintiff. — The evidence of value is to be confined to what the property is worth in the market, having regard to the most valuable use to which it may be devoted; and if it should appear that a witness had given an opinion as to value based upon the necessities of the plaintiff, or what the plaintiff could afford to give for the land rather than do without it, his evidence should be stricken out.

Id. — Value to Purchasers Generally. — The owner of land sought to be taken for public use is entitled to the market value of the land, to be

determined in view of all the facts which would naturally affect its value in the minds of purchasers generally, and it is therefore proper to consider for what purpose it is most valuable. Any existing facts which enter into the value of the land in the public and general estimation, and tending to influence the minds of sellers and buyers, may be considered.

ID. — EVIDENCE OF VALUE — OPINION OF WITNESS. — In a proceeding of eminent domain, all that is necessary to entitle a witness to give an opinion is to show that he has some peculiar means of forming an intelligent and correct judgment as to the value of the property in question, or the effect of a particular improvement, beyond what is presumed to be possessed by men generally.

ID. — QUALIFICATION FOR OPINION OF VALUE — OWNER OF LAND. — The owner of land whose property is sought to be taken for a public use, who has resided upon it and owned it for over twenty years, will be presumed to have acquired sufficient acquaintance with it, and of the value of the land in that neighborhood, to be able to give an intelligent estimate of its value.

APPEAL from a judgment of the Superior Court of San Mateo County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Ben Morgan,* and *A. Ruef,* for Appellant.

The water company should have shown that they had exhausted every effort to utilize that which they have, before they could take the defendant's land, under the exercise of the right of eminent domain for the use of the reservoir. (*Matter of Albany Street,* 11 Wend. 151; 25 Am. Dec. 618; *Reed* v. *Louisville etc. Co.,* 8 Bush, 72; *Spring Valley W. W.* v. *San Mateo W. W.,* 64 Cal. 131.) The court erred in refusing to permit the defendant to prove the value of the land for reservoir purposes, and in confining the proof to its value for agricultural purposes. (*Boom Co.* v. *Patterson,* 98 U. S. 403; *Harrison* v. *Young,* 9 Ga. 364; *Louisville etc. R. R. Co.* v. *Ryan,* 64 Miss. 399; *Chicago etc. R. R. Co.* v. *Catholic Bishop,* 119 Ill. 530; *San Diego Land etc. Co.* v. *Neale,* 78 Cal. 74.)

*Kellogg & King, William F. Herrin,* and *Charles N. Fox,* for Respondent.

Sections 1238 and 1239 of the Code of Civil Procedure authorize the condemnation of sites for reservoirs. (*Lake Pleasanton Water Co.* v. *Contra Costa Water Co.,* 67

Cal. 660.) Riparian rights are not specified in section 1238, and yet they may be condemned. (*St. Helena Water Co.* v. *Forbes,* 62 Cal. 182; *Lux* v. *Haggin,* 69 Cal. 300; Lewis on Eminent Domain, sec. 173.) It was shown on the trial, that the company had no other reservoir site possible, and that the real necessity then existed for building the reservoir. The company would not perform its duty toward the public unless it impounded sufficient water to guarantee the public against famine. (*Olmsted* v. *Proprietors of M. Aqueduct,* 46 N. J. L. 495; *Matter of New York Central etc. R. R. Co.,* 77 N. Y. 264; *Spring Valley W. W.* v. *San Mateo W. W.,* 64 Cal. 131; *Pittsburgh Junc. R'y Co.'s Appeal,* 6 Atl. Rep. 567; *New York Central etc. R. R. Co.* v. *M. G. L. Co.,* 63 N. Y. 326; *New York Central etc. R. R. Co.* v. *Kip,* 46 N. Y. 552; 7 Am. Rep. 385; Lewis on Eminent Domain, sec. 393.) The refusal of the court to allow the defendant to prove the value of the land for reservoir purposes, and the confining of the proof to its value for agricultural purposes, was not error, as the defendant had shown no qualification on the part of the witness to testify as to values of such character. Moreover, proof of the value of the land to the plaintiff was not admissible. (*Selma R. R. Co.* v. *Keith,* 53 Ga. 178; *Union Depot* v. *Brunswick,* 31 Minn. 297; 47 Am. Rep. 789; *Virginia and Truckee R. R. Co.* v. *Elliott,* 5 Nev. 367; *Penny* v. *Penny,* 37 N. J. Eq. 340; *San Diego Land etc. Co.* v. *Neale,* 78 Cal. 74; *Stinson* v. *Chicago etc. R'y Co.,* 27 Minn. 291; Lewis on Eminent Domain, sec. 479; *In re Furman Street,* 17 Wend. 670.) It was not error for the court to sustain plaintiff's objection to the question asked the witness Howard, as to whether he knew " what the value of that land is down there for reservoir purposes," as the question referred to other land in the vicinity, and was intended to ascertain what the company had paid for such other land in the same reservoir site. (*Central Pac. R. R. Co.* v. *Pearson,* 35 Cal. 262; *Stinson* v. *Chicago etc. R. R. Co.,* 27 Minn. 289; *East Penn. R. R. Co.* v. *Hiester,* 40 Pa. St. 55; *R. R. Co.* v. *Patterson,* 107 Pa. St. 464; *Penn. R. R. Co.* v.

*Ziemer,* 124 Pa. St. 560; *Cobb* v. *Boston,* 112 Mass. 183; *Springfield* v. *Schmook,* 68 Mo. 396; *Howard* v. *Providence,* 6 R. I. 516; *Brunswick and Albany R. R. Co.* v. *McLaren,* 47 Ga. 546; *King* v. *Iowa Midland R. R. Co.,* 34 Iowa, 461; *Cummins* v. *Des Moines etc. R. R. Co.,* 63 Iowa, 397.) Witnesses should not be allowed to give their opinions as to the value of the property for a particular purpose, but should state its market value in view of all the purposes to which it is adapted. (Lewis on Eminent Domain, sec. 479; *Stinson* v. *Chicago etc. R. R. Co.,* 27 Minn. 284; *Alloway* v. *Nashville,* 88 Tenn. 510; *Boom Co.* v. *Patterson,* 98 U. S. 408; *Currie* v. *Waverly etc. R. R. Co.,* 52 N. J. L. 381.)

DE HAVEN, J. — The respondent is a corporation organized under the laws of this state for the purpose of supplying the city and county of San Francisco and its inhabitants with water, and is engaged in that business. This action is brought to condemn certain land of the defendant as part of a reservoir site, and which is alleged by the plaintiff to be necessary for it in the prosecution of the said business for which plaintiff was created. The answer of defendant, among other things, denies that such intended use of the land sought to be taken is a public use, or that the same was necessary for the purpose of enabling plaintiff to effect the purpose for which it was created.

1. It was held by this court in the case of *Lake Pleasanton Water Co.* v. *Contra Costa Water Co.,* 67 Cal. 659, in construing sections 1238 and 1239 of the Code of Civil Procedure, that the power of eminent domain extended to the taking of land for such purposes as are named in the complaint in this action. We there said: "The supplying of inhabitants of an incorporated city with pure, fresh water is, by section 1238, declared to be a public use, in behalf of which the right of eminent domain may be exercised, and section 1239 provides, in effect, that the entire estate in a given piece of land may be taken, when needed for a reservoir, in behalf of such use."

We have no doubt of the correctness of this conclusion, and therefore hold that the purpose for which plaintiff alleges that it desires to acquire the appellant's land by this proceeding is a public use, and consequently one in behalf of which the power of eminent domain may be exercised.

2. There is no doubt of the proposition, that before land can be taken for a public use it must appear that the taking is necessary for such use. This is a question of fact to be determined by the court or jury in view of all the evidence in the case, and the burden of proof is upon the plaintiff. The evidence must be sufficient to show that the land is reasonably required for the purpose of effecting the object or carrying on the business for which the plaintiff was organized, and in this case not only the present demands of the public upon the plaintiff, but those which may be fairly anticipated on account of the future growth of the city, are to be considered. We think the evidence was sufficient to show a necessity for the taking of defendant's land within the meaning of the law, and we cannot disturb the finding of the court below on that point.

3. The court did not err in sustaining objections to the questions asked the witness Howard, as to how much the plaintiff had paid per acre for the Sherwood and Howard tracts, or as to offers made by plaintiff to purchase these tracts. Howard was a witness for defendant, and these questions were asked by defendant in the examination in chief of the witness. However the rule may be in other states, it is settled here that such facts are not admissible as evidence in chief, but only by way of cross-examination for the purpose of testing the fairness or honesty of an opinion which the witness may have given upon his direct examination in relation to the value of the property involved in the action. (*Central Pacific R. R. Co.* v. *Pearson,* 35 Cal. 262.)

4. The witness Howard was also asked the following questions: " Do you know what the value of that land is down there for reservoir purposes? Have you any

means of knowing the value of this land for reservoir purposes? "

The questions were objected to by plaintiff as irrelevant and incompetent. The objections were sustained. The witness was the president of the plaintiff corporation, and the objections made to these questions do not proceed upon the ground that the witness was not competent to answer them, or that the proper foundation had not been laid by proof that in point of fact the land did have, by reason of its situation and surroundings, an added, distinctive value for reservoir purposes. The question is thus presented whether, assuming that the land sought to be taken was specially valuable for the purpose named, it was relevant and competent to show such value. There is undoubtedly some conflict in the authorities as to the admissibility of questions put in this form, but we think the point was decided in favor of the admissibility of such evidence, in the case of *San Diego Land etc. Co.* v. *Neale,* 78 Cal. 63, and in the same case on a second appeal to this court. (88 Cal. 50.) Nor would this rule, as supposed by respondent, justify the admission of speculative opinions based upon the necessities of the plaintiff, or what the plaintiff could afford to give for the land rather than to do without it. If it should appear, during the course of the examination, that a witness had given an opinion as to value formed upon any such considerations, it would be the duty of the court to strike such opinion evidence out as resting upon an illegal and improper basis. The rule is, that the owner is entitled to the market value of his land, to be determined in view of all the facts which would naturally affect its value in the minds of purchasers generally, which necessarily makes it proper to consider for what purpose it is most valuable. " Any existing facts which enter into the value of the land in the public and general estimation, and tending to influence the minds of sellers and buyers, may be considered." (*Russell* v. *St. Paul etc. R. R. Co.,* 33 Minn. 213.) If, therefore, the land sought to be condemned in this action by reason of

its situation, and because it is part of a basin adapted
for resorvoir purposes, would be regarded as more valu-
able by purchasers generally than if it did not possess
such advantages of location and adaptability for use as
a reservoir, the plaintiff should be permitted to show
its value with reference to such facts, by the testimony
of competent witnesses; and as said in *San Diego Land
etc. Co.* v. *Neale,* 78 Cal. 69, this is not in reality any
departure from the rule which requires the evidence
of value to be confined to what the property is worth in
the market, having regard to the most valuable use to
which it may be devoted. The court there said: " What
is done is merely to take into consideration the purposes
for which the property is suitable, as a means of ascer-
taining what reasonable purchasers would in all proba-
bility be willing to give for it, which in a general sense
may be said to be the market value."

5. The defendant, Mrs. Drinkhouse, was a witness
in her own behalf, and after testifying that she had
owned the land sought to be taken for over twenty years,
and was using it for a summer residence for herself and
family, she was asked:—

"Q. Do you know the value of this land? A. I know
what the water company has paid other people.

"Q. Do you know the value of this land of yours?
A. What do you consider value?

"Q. Answer, yes or no. A. I think I do.

"Q. What is its value?"

An objection was made to this last question, upon the
ground that no foundation had been laid for it, which
was sustained. This was error. All that is necessary
to be shown to entitle a witness to give an opinion is to
show "that he has some peculiar means of forming an
intelligent and correct judgment as to the value of the
property in question, or the effect of a particular im-
provement, beyond what is presumed to be possessed by
men generally." (Lewis on Eminent Domain, sec. 437.)
In this connection the same author says: " These pecu-
liar means may consist in . . . . a long acquaintance

with the particular property and the neighborhood where it is situated, accompanied with the occupation or ownership of similar property, and especially if accompanied with a knowledge of sales of similar property." We think the witness was competent to give an opinion as to the value of her own land, within the general rule on that subject. She had a particular knowledge of it, being a resident upon it, and had owned it for over twenty years. The natural presumption would be that she had, during that long period, acquired sufficient acquaintance with it, and of the value of the land in that neighborhood, to be able to give an intelligent estimate as to the value of her own property. (*Burlington etc. R. R. Co.* v. *Schluntz,* 14 Neb. 423; *Lehmicke* v. *St. Paul etc. R. R. Co.,* 19 Minn. 464. See also *Walker* v. *City of Boston,* 8 Cush. 279; Pierce on Railroads, 227.) In the first case cited, the court, in passing upon the competency of the owner of the land to testify to its value, said: "He swore explicitly that he knew its value, and from the fact that he had lived there for twelve years, had made the improvements upon it, and appears to have possessed ordinary intelligence at least, I am satisfied he was qualified to give his opinion on that point." The witness should have been permitted to testify to the value of the property. It may be that a cross-examination would have shown that such opinion was entitled to but little weight, but that does not affect the question of its admissibility.

We find no errors in the record other than those we have pointed out, and these do not require a retrial of any of the issues except those relating to the value of the land sought to be taken, and the damage to the remaining portion of defendant's land not taken.

Judgment and order reversed, with directions to the court below to retry the issues as to the value of the land sought to be taken, and the damage to the remaining portion of the land not taken, and thereupon to enter judgment in accordance with the prayer of the

complaint, and in favor of the defendant, for such value and damage and costs.

PATERSON, J., BEATTY, C. J., and GAROUTTE, J., concurred.

HARRISON, J., concurring. — The court erred in not permitting the witness Howard to answer the questions: "Do you know what the value of that land is down there for reservoir purposes? Have you any means of knowing the value of this land for reservoir purposes?"

The "just compensation" which is guaranteed to the owner whose property is to be taken or damaged for public use is its market value, and the market value of land is determined by a consideration of all of the uses to which it may be applied, as well as the purposes for which it is adapted. For the purpose of ascertaining this value, it is proper to show its condition and surroundings, the uses to which it has been applied, and its capabilities for other uses, including that for which its condemnation is sought. Its value is not limited, either by that of its present use, or by the use for which it is sought, since either of these may be less than its actual market value. The owner is entitled to its highest market value for any use to which it is adapted, and any advantage that the property has, present or prospective, by virtue of its position, and for which it may be available, constitutes an element in its value, which is to be considered by the jury in determining the compensation to be awarded him, and which the owner is entitled to show to the jury by any competent evidence. The market value of the land is neither the aggregate nor the average of the different values of the uses to which it may be applied, but it is the result to be determined from a consideration of each of these uses in connection with all the other conditions. A tract of land may be eligible as a site for a railroad station, but its value would vary with the contingency of its being selected for such a purpose. It may be adapted for a res-

ervoir site, but its value for such a purpose would be
qualified by the prospect, greater or less, of any one
seeking to build such a reservoir. Its market value is
affected by such contingency, but is not to be deter-
mined by the fact that the party seeking to condemn it
has already determined to build a reservoir. To allow
that element to enter into the computation would be to
make the plaintiff's necessity the owner's opportunity.

It appears to have been conceded at the trial, that the
territory of which the land of the defendant forms a por-
tion is a suitable site for a reservoir, and, as a conse-
quence, it has a value for such a purpose. Whether that
purpose gives it a higher market value than any other
to which it is adapted was to be determined by evidence;
but if it does, the owner is entitled to compensation for
such value.

The general rule is, that witnesses are to give evidence
only of facts, and that the inference from those facts is
to be drawn by the jury; but in determining the value
of land, opinions of those who, from their familiarity
with the subject, are supposed to have learned its value,
are received in evidence. Such witnesses are not ex-
perts in the strict sense of that term,—that is, they are
not persons skilled in any science or art,—but their opin-
ions are received more from the necessity of the case, as
being the most satisfactory and often the only attainable
evidence of the fact to be proved, and upon the theory
that from their knowledge of the locality and its sur-
roundings, they have acquired a better means of deter-
mining the value of the land than the jury could from
all the evidence which it would be practicable to place
before it. (*Swan* v. *Middlesex*, 101 Mass. 177.) When,
therefore, a witness is called upon to prove such value, it
is essential in the first place to show that he has the
qualification and ability to give an opinion, and for that
purpose to call his attention to the elements which go to
make up its market value. And in order that his opin-
ion may be listened to by the jury, and receive from
them its proper consideration, it is also proper that after

he has given his opinion, he be allowed to give the basis upon which it has been formed, or the elements out of which it is composed. The jury can then readily perceive the force of the reasons upon which it is based, and the soundness of his conclusion, and can judge of his capacity to give the opinion, as well as the weight to which it is entitled. The capacity of the expert is generally tested upon cross-examination, but it is equally competent for the party calling him to support his opinion after he has given it, by having him give the details upon which it is based. (*Keith* v. *Lothrop*, 10 Cush. 457; *Dickenson* v. *Fitchburg*, 13 Gray, 557; *Hawkins* v. *Fall River*, 119 Mass. 94.)

Inasmuch, however, as such evidence is admissible only for the purpose of testing the weight to be given to his general opinion of its market value, — to corroborate it or to defeat it, — it is evident that the principle upon which it is admitted demands that he shall first give his estimate of such value in consideration of all of those uses and elements; but he is not to be allowed in the first instance to give an opinion of its respective values for those independent uses. Such evidence would not be competent, independent of the main question to determine what is its market value, or for any other purpose than in support of his general opinion. (*Burt* v. *Wigglesworth*, 117 Mass. 306.) And it might be that after having given his opinion of its value for a specific use, he would not be able, or might not be asked, to give an opinion of its market value. The land might be very valuable, abstractly considered, for reservoir purposes, while such value would be greatly diminished by the want of a demand for such purpose, and its market value therefor less than for any other purpose. The jury would not be authorized to determine its market value from its own consideration of only the elements of value that might be given by the witness, as there might be many other elements going to determine its market value of which they had no knowledge.

In *San Diego Land etc. Co.* v. *Neale*, 78 Cal. 80, this

distinction was not sufficiently presented in the opinion of the court, and while some of the language in the opinion might lead to the conclusion that it was proper to introduce testimony of the value of the property for a reservoir site as an independent fact to be considered by the jury, yet the reasoning of the opinion, and the authorities cited in support of it, as well as the facts in the record, show that the question really determined was whether the jury had the right to take such value into consideration for the purpose of determining the market value of the land.  To the extent that the opinion countenances the right to offer evidence of such value as an independent fact to be considered by the jury as a measure of the compensation to be awarded, it is at variance with an almost unbroken line of authorities, and, in my opinion, ought not to be followed.  It appears from the record in that case, although not so stated in the report, that the witnesses had first given their opinion of the market value of the land for general purposes, and were then asked its value as a reservoir site.  The form of the question was obnoxious to objections stated herein, but the ground upon which its admission was argued was the right to have such value considered as an element in determining its market value.  When the case came here upon the second appeal (88 Cal. 50), the court, in commenting upon its opinion as construed in *Alloway* v. *Nashville*, 88 Tenn. 518, said, speaking through Mr. Justice Paterson: "It was decided on the former appeal, and is the law of the case, that the value of the land for any special purpose may be *taken into account* as one of the elements tending to show its market value. The fact that the land is suitable for such a purpose, and a chance exists that it may some time bring an enhanced value therefor, has a tendency to increase its market value, and may properly be considered in determining what its present market value is. . . . . We did not hold that the value of the land for reservoir purposes was a measure of damages, independent of any other consideration of element of market value. On the contrary, the

opinion distinctly states that the market value is to be the measure of damages, and that evidence of value for a special purpose is only to be considered as an element of the question." (Page 56.)

Inasmuch, then, as the owner is entitled to receive as compensation for his land its highest market value for any use to which it is adapted, and as such value is to be shown to the jury by the opinions of witnesses who must at the same time satisfy the jury of their qualification to give the opinions, it is proper for the party calling the witness to show by preliminary questions whether the witness has such qualifications. As it was proper in the present case for the jury to take into consideration the fact that the land had a value for reservoir purposes, it was equally proper for the witnesses, in giving their estimates of its value, to take the same element into consideration, and unless they knew or had the means of knowing such value, their testimony would not accomplish its purpose. The witness Howard was not asked at this point of examination to state what such value was, but was merely asked whether he knew the value. If he had such knowledge, it would greatly strengthen any testimony he might give on the subject, while if he should state that he had no such knowledge, the party calling him might not question him any further.

The court should also have allowed Mrs. Drinkhouse to answer the question asked of her. She was the owner of the land, and had lived upon it for twenty years, and must be presumed to have some knowledge of its value. All opinions respecting values of real estate, even of those who are dealing therein, are based more or less upon hearsay, — the statements of others for which different parcels have been sold. The fact that she knew only of sales to the plaintiff affected her capacity only in degree. The weight to be given to her testimony could easily have been determined by the jury. "The market value of land is not a question of science or skill upon which only an expert can give an opinion.

Persons living in the neighborhood may be presumed to have a sufficient knowledge of the market value of property, with the location and character of the land in question. Whether their opinion has any proper ground to rest upon, or is mere conjecture, can be brought out on cross-examination." (*Pennsylvania R. R. Co.* v. *Bunnell,* 81 Pa. St. 426.)

Upon the other points involved in the case, I concur in the opinion of Mr. Justice De Haven. I also concur in the order of reversal and the direction to the court below.

McFARLAND, J., dissenting. — I dissent from the judgment.

I concur in the opinion of Mr. Justice De Haven, except as to the two points upon which the judgment is reversed.

1. I think the objection to the question asked Mrs. Drinkhouse about her opinion as to the value of the land was properly sustained. The only knowledge she showed upon the subject was her knowledge of what "the water company has paid other people." But if — as is admitted — what the company paid other people for other lands could not be received in evidence, how could the knowledge of what they so paid be a proper foundation for allowing the opinion of the witness?

2. It is doubtful if the question asked Howard, "Do you know what the value of that *land is down there* for reservoir purposes?" referred to the land involved in this action. The questions immediately preceding it referred to another piece of land called the Sherwood tract, which plaintiff had purchased; and defendant had been trying to find out what plaintiff had paid for *that* tract. But assuming that the land "down there" may have meant the land of defendant, it is plain from the whole course of the examination, that defendant was seeking to show what the land was worth to plaintiff, — that is, what plaintiff, from necessity, would be compelled to pay. The object of the question, under the circum-

stances, was to show, not what the general value of the land was, but what it was worth to the particular party who was compelled to have it. There has been a good deal written upon the subject of value in condemnation proceedings, and a good deal of loose language has been (sometimes inadvertently) used; but I apprehend that a comparison of all the authorities will show that the rule to be gathered from them goes no further than this: the condition of the property, all its surroundings, its availability for any purpose, — any use. to which it could be profitably put, — all these things can be shown; but when a witness is asked as to value, the proper question is, What is its market value? and not, What is its value for the particular purpose for which the plaintiff wants it? (Lewis on Eminent Domain, sec. 479; *Stinson* v. *Chicago etc. R'y Co.*, 27 Minn. 291.) I think that the case at bar was fairly tried, and that the judgment should stand.

SHARPSTEIN, J., concurred in the dissenting opinion of Mr. Justice McFarland.