[Civ. No. 2025. First Appellate District.—June 24, 1918.]

## CITY OF OAKLAND (a Municipal Corporation), Respondent, v. EDSON F. ADAMS et al., Appellants.

EMINENT DOMAIN — DESCRIPTION OF LAND — PLEADING—REFERENCE TO DEED.—In a proceeding in eminent domain by the city of Oakland to condemn defendants' property for a public park, a reference in the complaint to a deed from the Oakland Waterfront Company to the city of Oakland, which deed described the westerly line of the park lands as the easterly line of Rancho San Antonio, as finally determined and patented to V. and D. Peralta by the United States of America, between stations 131 and 134, and which described the easterly line of the Peralta grant of the San Antonio Rancho between the stations as the meandering line along the west shore of San Antonio Creek at the line of ordinary high water, had the same effect as if the description were incorporated in the complaint.

ID.—DESCRIPTION OF LAND—UNCERTAINTY AS TO ONE BOUNDARY—REFERENCE TO INSTRUMENTS.—In such a proceeding, where the complaint alleged that the tract sought to be condemned was the whole of an entire tract, and three boundaries thereof were described with certainty, except as to the length of two of them, the pleading sufficiently informed the defendants of the land the plaintiff sought to take, where the remaining boundary was described with reference to other instruments.

ID.—EVIDENCE — TESTIMONY OF DEFENDANT — INTENTION IN ERECTING FENCE—QUESTION FOR JURY.—In such a proceeding, the question of construction of the testimony of one of the defendants, who erected a fence on the property, as to whether it was his intention to thereby mark the boundary, was for the jury, and any knowledge gained by them in viewing the property was independent evidence, which they might take into consideration.

ID.—LOCATION OF BOUNDARIES—DUTY OF COURT.—In such a proceeding, the court should determine the boundaries of the land sought to be condemned and locate such boundaries upon the ground.

ID.—FAILURE TO LOCATE BOUNDARIES — HARMLESS ERROR.—In such a proceeding, where the jury found the boundary of the property to be at fence line, and the court adopted such finding, and the jury evidently based its verdict on such line, the failure to locate the boundaries on the ground was harmless error.

ID.—DESCRIPTION OF PROPERTY — FAILURE OF PLAINTIFF TO INTRODUCE EVIDENCE—SUBSEQUENT PROOF BY DEFENDANTS—ERRONEOUS DENIAL OF NONSUIT HARMLESS ERROR.—Where, in such a proceeding, the plaintiff rested its case without introducing any evidence to identify the land described in the complaint, and the sufficient instruments

were subsequently introduced by the defendants, and much evidence was taken as to the location of the boundary line, including the examination of the premises by the court and jury, there was no error, in view of section 4½ of article VI of the constitution, in denying a motion for nonsuit at close of plaintiff's testimony.

ID.—APPEAL—IMPROPER QUESTIONS—FAILURE TO REQUEST ADMONITION TO DISREGARD—INSUFFICIENT GROUND FOR REVERSAL.—In such a proceeding, it cannot be urged on appeal that certain questions asked of expert witnesses were injurious for the reason that they placed before the jury certain facts, where no request was made for an admonition to the jury to disregard the implications.

ID.—LIMITATION OF CROSS-EXAMINATION OF EXPERT WITNESS—DISCRETION NOT ABUSED.—In such a proceeding, it was not an abuse of discretion to refuse to permit an expert witness to answer questions on cross-examination as to the character of the property and its suitability for residence purposes, where the matter had already been gone into.

ID.—VALUE OF LAND—PROPOSED USE BY CITY—IMPROPER ELEMENT.—In such a proceeding, an objection to a question asked of one of defendants' expert witnesses whether in estimating value he considered the purpose for which the city was endeavoring to acquire the land was properly sustained.

ID.—INTEREST OF WITNESS IN ADJACENT LAND—PROPER QUESTION.—In such a proceeding, it was error to sustain an objection to a question asked of a real estate agent, who had estimated values for the city, as to whether he was interested in the sale of land that would be benefited by the park, but such error was harmless where the jury did not adopt his estimate of value.

ID.—KNOWLEDGE OF GEOLOGY OF ESTUARY.—In such a proceeding, where an expert witness testified that in fixing value of the property he took into consideration the depth of the mud and marsh portion of it and the cost of filling, there was no error in not permitting him to give an answer to the general question of his knowledge of the geology of the estuary in question.

ID.—LOCATION OF BOUNDARY — DUTY OF DEFENDANTS — HARMLESS INSTRUCTION.—In such a proceeding, the defendants were not harmed by an instruction that the duty to prove the location of the boundary line of the property rested upon the defendants, since the complaint sufficiently described the property, and the court and jury in hearing the evidence definitely found the boundaries.

APPEAL from a judgment of the Superior Court of Alameda County.   T. W. Harris, Judge.

The facts are stated in the opinion of the court.

J. P. O'Brien, for Appellants.

Paul C. Morf, City Attorney, and John J. Earle, Deputy City Attorney, for Respondent.

BEASLY, J., *pro tem.*—In this eminent domain proceeding by which defendants' property was condemned by the city of Oakland for a public park, the judgment is attacked on this appeal by the defendants on the ground that the description of the property found in the complaint is insufficient. "The complaint," says appellants' counsel in his reply brief, "does not specifically describe the easterly boundary of this land, but it refers to a deed made by the Oakland Waterfront Company to the city of Oakland for such description. This deed fixes the easterly boundary as being the easterly line of the Rancho San Antonio as finally confirmed and patented to V. and D. Peralta between stations 131 and 134. . . . Nowhere in the patent are stations 131 or 134 or intervening stations mentioned or referred to." The reference to the Oakland Waterfront Company's deed to the city of Oakland as matter of description has the same effect as if the description were incorporated in the complaint. (*Vance* v. *Fore,* 24 Cal. 435.) This deed describes the westerly line of the park lands as the easterly line of Rancho San Antonio, as finally determined and patented to V. and D. Peralta by the United States of America, between stations 131 and 134; and the easterly line of the Peralta grant of the San Antonio Rancho between the stations mentioned was described in the patent as follows: "Thence meandering the west shore of San Antonio creek at the line of ordinary high water" to a station. Under the authority of *Oakland* v. *Oakland Waterfront Co.,* 118 Cal. 160, [50 Pac. 277], and *City of Oakland* v. *Wheeler,* 34 Cal. App. 442, [168 Pac. 23], this description must be held sufficient so far as the complaint is concerned.

It was further alleged in the complaint that the tract sought to be condemned was the whole of an entire tract, and three boundaries of this tract were admittedly described with certainty except as to the length of two of them. What may be called the two side-lines extending from the Fallon Street or western frontage of the property sought to be condemned to the easterly line thereof, which is the line in dis-

pute, were described as so many feet more or less in length; and this easterly boundary—which may be called an end-line of the tract for convenience—would have been left uncertain but for the references to the other deed and the patent, and the description of this line in the patent as the meander line of ordinary high tide of San Antonio Creek, which is a tide-water stream. But these references, taken with the allegation that the tract as a whole was to be condemned, were sufficient in the complaint to inform the defendants accurately of the land the plaintiff sought to take.

As contended in the case of *City of Oakland* v. *Wheeler, supra,* so here it is claimed that the line could not be located on the ground. The force of this objection is weakened by the fact that the city sought to condemn the whole of defendants' tract, and that they themselves, as one of them testified, knew their land extended to the Peralta line, and had always paid taxes on and claimed all the land to the Peralta line. As in the case of *City of Oakland* v. *Wheeler,* so here, certain engineers testified that the line of the land could not be located on the ground by the description; but the court and jury visited and inspected the premises. What they found or saw does not appear in the record. There was some evidence as to the location of this tide line upon the ground. There was also a fence on the property erected by the defendant, Edson F. Adams, which the jury found in a special verdict, in answer to a question submitted to them, was the Peralta line, and this Peralta line, as we have seen, was the line of ordinary high tide. It does not appear that the jury may not have been able to determine for themselves upon an inspection of the property that this fence was erected upon this line, the natural place for a fence marking the boundary of a man's property to be. It is true that Mr. Adams testified that he did not erect the fence for this purpose, and gave various reasons which, it is claimed, show that he did not erect it with the intention of placing it upon the boundary of the defendant's property; but the question of the construction of this testimony and what they saw when they visited the premises, and of the weight and construction of other testimony on this subject, was for the jury. It is well settled in this state that knowledge gained by the court from a view of the premises is independent evidence, to be taken into consideration in

determining the issues of the case. (*People* v. *Milner*, 122 Cal. 171, [54 Pac. 833]; *Hatton* v. *Gregg*, 4 Cal. App. 537, [88 Pac. 592].)

"If a finding of fact is based upon a reasonable inference, it is not within the power of this court to set it aside any more than it is within its power to set aside any other finding supported by sufficient legal evidence, for a finding of fact based upon reasonable inferences drawn from facts proved with legal sufficiency is as much and as completely as any other finding of fact a finding based upon good and sufficient evidence." (*Ryder* v. *Bamberger*, 172 Cal. 791, [158 Pac. 753].) If the court and jury discredited Mr. Adams' explanation as to this fence, and found evidences upon the ground which indicated that the fence was actually placed upon the high-tide line, their finding in that respect cannot be here reviewed; and it may be added that the jury found this fence line to be the Peralta grant line, and that the court, in findings made up by it, adopted this finding of the jury.

The appellants contend that the court and not the jury should have determined the boundaries of the land sought to be condemned and have located these boundaries upon the ground. While it may be said that the court should have done this under well-settled authorities in this state (*Vallejo etc. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, [147 Pac. 238]; *City of Oakland* v. *Pacific Coast Lumber Co.*, 171 Cal. 392, [153 Pac. 705]; *San Joaquin Irr. Co.* v. *Stevenson*, 26 Cal. App. 274, [147 Pac. 254]), nevertheless, as the jury found the boundary to be at the fence line, and as the court subsequently adopted that finding as a fact, and as the jury evidently based its verdict for damages done to the defendants upon that line, no harm can possibly have come to the defendants by reason of the court not following the course which the defendants insist it should have pursued in settling the location of the boundary. The question of the sufficiency of this description was raised in many ways during the trial, but all these objections are answered by the foregoing considerations.

At the close of plaintiff's testimony the defendants made a motion for a nonsuit. The plaintiff had rested its case without introducing any evidence whatever to identify the land described in the complaint. It may be conceded, al-

though we do not so decide on this record, that the plaintiff should have introduced in evidence the deed of the Oakland Waterfront Company to the city of Oakland, and the Peralta grant from the United States government heretofore referred to, at least before resting its case; but these instruments were subsequently offered in evidence by the defendants, and much evidence was taken as to the location of the boundary line, including the examination of the premises by the court and jury. We have examined this entire record with care, and it seems to us that, conceding that the defendants' motion for a nonsuit should have been granted, nevertheless this case comes squarely within section 4½ of article VI of the constitution, providing that no judgment shall be set aside in any case for any error as to any matter of procedure unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. An examination of the record here fails to indicate that sufficient damages were not awarded by the jury to the defendants, nor does it appear from an examination of the entire cause, including the evidence, that there has been in any other respect a miscarriage of justice. It seems to us that even conceding defendants' position as to the error of the court in denying their motion for a nonsuit, this is on that point a proper case for the application of the constitutional provision.

The appellants' next ground for reversal is that their objection to a question asked on cross-examination of one of their expert witnesses as to the value of the land was improperly overruled. The question was whether or not the witness' opinion of the value of the property would be affected if it were shown that six acres of property situate in the neighborhood of the property sought to be condemned had been sold on December 4, 1905, to the city of Oakland by the defendants for the sum of fifteen thousand dollars. The witness answered, "No." Of course, this answer could not have injured defendants; but the defendants complain that the question itself was injurious to them in that by means thereof the city attorney got before the jury the fact that they had sold to the city of Oakland a similar piece of property for a much lower price than that claimed by them for the property sought to be taken in this proceeding. The

answer to this is that the court was not asked to admonish the jury to disregard the implication of the question.

Another similar question objected to by the defendants was whether, if it should be shown to the witness that the property was assessed by the assessor of the city of Oakland at the sum of five thousand five hundred dollars, that would affect his estimate of value. The witness answered that it would not, and added to his answer an explicit and lengthy statement of the reasons supporting his opinion as to the market value of the land.

Again, the defendants complain that the question was an attempt to get before the jury evidence of what the property had been assessed for by the city of Oakland, and thus to prejudice their judgment as to its value. But as with the former question the defendants did not ask the court to instruct the jury to disregard the insinuation contained therein, and cannot now complain of the effect that may have been produced upon the jury thereby.

Mr. Woodward, one of plaintiff's witnesses, was asked if it was not a fact that certain property in the neighborhood of the property sought to be condemned was marsh-land and all built in and improved with residences and business property, and the further question if it was not a fact that substantial residences existed on marsh-land filled in on Harrison Street. Objections to these questions were sustained by the court. Mr. Woodward had testified in chief that in estimating the value of the land sought to be condemned he had taken into consideration the character of the land; and that his objection to the property for residence purposes was not only that it could not be sewered by gravity, but also because it was generally undesirable for residential purposes, as it was marsh and low land. This would indicate that these questions should have been answered. But this witness had been examined at great length, and the court undoubtedly, in passing upon this question, as appears from a colloquy between the judge and the defendants' counsel, was attempting to exercise its discretion in limiting the cross-examination of the witness within reasonable bounds. The record in this case is a bill of exceptions; questions and answers do not always appear therein, and much of the evidence of this witness on cross-examination, found in the record in narrative form, indicates that the witness may have

been asked similar questions previously which were permitted to be answered; and we cannot say from this record that the trial court abused its discretion when it refused upon this ground to permit these questions to be answered. Further, it may be said that it was the duty of counsel to point out to the court, in a lengthy trial such as this, and upon a ruling based, as this was, upon a desire to limit the examination, the fact—if it was a fact—that the question which counsel sought to have answered had not been previously asked. This is especially true in view of the fact that the court, in sustaining the objection, said: "I think we went over this ground practically the other day. It is a matter of repetition."

It is contended that three witnesses, called by the plaintiff in rebuttal upon the question of value, were asked to give their opinions of the value of certain land which is essentially different from that described in the complaint. It is sufficient in answer to this, without reciting these very long questions in this opinion, to say that the city attorney evidently attempted in the question to ask as to the value of the property as bounded on the easterly side by the fence which was afterward found by the jury and by the court to be the easterly boundary line of the property sought to be condemned; but whether counsel succeeded in doing this or not he did ask the value of a part of the property less in extent than that described in the complaint, and also less than that described in the judgment in the case. This he had a perfect right to do. It may be added that the question was asked at a time when the boundary of the property had not been definitely settled, nor had the court been asked up to that time to definitely settle this boundary. Counsel were trying the case upon the theory evidently that the jury was to settle the location of this boundary line. That being so, the questions of counsel must necessarily have been somewhat indefinite as to the boundaries of the property, and no substantial right of the defendants seems to have been transgressed by the answer to this question.

The court, it is claimed, erred in sustaining plaintiff's objection to the following question asked of one of defendants' witnesses on cross-examination: "When you made your estimate upon the value of this property did you consider as a basis of your estimate the purposes for which the city was

endeavoring to acquire it?'' There is a fundamental distinction between the question asked in the case of *Spring Valley Water Works* v. *Drinkhouse,* 92 Cal. 528, [28 Pac. 681], upon which counsel rely, and the question above quoted. It was shown in the case mentioned that the land was valuable for reservoir purposes; and, of course, its value for reservoir purposes should have been taken into consideration (as was there held) by the jury in fixing the value of the property. But here it does not appear that this particular property had any distinct value for park purposes over any other property that might have been acquired by the city of Oakland; at least we find nothing in the record indicating that it had such distinctive value. It does not seem that the fact that the city intended to acquire this property and use it for park purposes should cause it to be penalized, or that the increment in value which might attach to it because of the fact that the city desired to acquire it to convert it into a city park should raise its value to the city for that purpose. We think the objection was properly sustained. Indeed, it appears from this record that this property could only be made suitable for park purposes by an expenditure of a great deal of money on it. We think the value to be placed on property situated as this was should not be raised because the city was endeavoring to acquire it for the purpose of a public park.

A. J. Snyder, a real estate agent who had estimated the value of the property for the plaintiff. was asked if he was interested in the sale of land that would be benefited if the land sought to be condemned was acquired for park purposes. An objection to this question was sustained. This objection should have been overruled, as its answer, if in the affirmative, would have shown an interest on the part of Snyder in the acquisition by the city of this property for park purposes; but in view of the fact that the jury did not adopt Snyder's estimates, but, on the contrary, gave a verdict several thousand dollars higher in amount than the estimate placed by Snyder upon the property, we do not feel inclined to reverse this case because of this error.

The question, ''Are you acquainted with the geology of the estuary in that locality?'' asked by the defendants of one of plaintiff's witnesses on cross-examination, was too general in its nature. The witness had stated that in fixing the value

of the property he had taken into consideration the depth of the mud or marsh upon portions of it, and that the value of the property depended upon the depth of the mud and the cost of filling the land. He also testified that he did not know what the depth of the mud was, but had assumed in making his estimate of value that the mud was fifteen to twenty feet deep. There was no error in not permitting him to give an answer to the general question of his knowledge of the geology of the estuary, in view of the testimony which he had given. If counsel wished to know more about the depth of the mud and the condition of the marsh, he should have directed his questions specifically to those factors of the situation, and should not have asked a general question such as the one propounded here.

After reciting considerable testimony concerning the value of the property, defendants' counsel contends that the character of this testimony was such that it fell far short of the legal measure of sufficiency which the law requires to sustain a judgment; but an examination of the record shows ample testimony of value to sustain the judgment in this case.

We do not think that the instruction to the jury that the duty to prove the location of the Peralta line rested upon the defendants falls within the rule laid down in the case of *Aliso Water Co.* v. *Baker*, 95 Cal. 268, [30 Pac. 537]. The question in that case was the certainty of the description of certain water rights to be condemned. The description of the water rights in the complaint was held uncertain in not showing definitely what water rights were proposed to be condemned. The case arose on a demurrer for uncertainty to a complaint to condemn certain rights to the water of Sycamore Creek, but neither the quantity of the water sought to be condemned nor the rights thereto which the plaintiff undertook to take from the owners by the proceeding were definitely set out. In this case the complaint does, as we hold, sufficiently describe the property to be taken. The court and jury on hearing the evidence definitely found the boundaries of the property. Conceding that the instruction was in the abstract an improper one, nevertheless we cannot see that the defendants were prejudiced in any substantial right thereby.

These considerations, at the expense of much space, seem to us to dispose of this case.

The judgment is affirmed.

Kerrigan, J., and Zook, J., *pro tem.*, concurred.