[Civ. No. 16354. Second Dist., Div. Three. May 25, 1948.]

THE PEOPLE, Respondent, v. EDWARD HENDERSON et al., Appellants.

Edward Henderson and William T. Selby for Appellants.

C. C. Carleton, George C. Hadley, Hodge L. Dolle, R. B. Pegram and John N. McLaurin for Respondent.

SHINN, Acting P. J.—Defendants are the owners in fee of a certain portion of Lot 59, Rancho Santa Paula y Saticoy, in the county of Ventura. Their predecessors in interest had granted to the State of California "a right of way and incidents thereof" for a public highway upon and across a portion of said Lot 59. The area of the easement may be generally described as follows: it extends in a northeasterly and southwesterly direction; it is 71.18 feet wide along its northeasterly boundary, and at a distance of 343.56 feet southwesterly it is 114.51 feet wide; its southeasterly boundary is the center line of Telephone Road; its northwesterly boundary is a long curved line inside of and parallel with which is a drainage ditch some

17 feet wide. Defendants constructed a 20 feet by 30 feet temporary shed consisting of a galvanized iron roof on six or eight 2 x 4 upright posts, with no side walls. It was erected on or about July 1, 1946, and upon demand of plaintiff and after the commencement of the present action it was removed August 25, 1946. The action was brought by the State of California to enjoin the maintaining of said structure and for damages. Findings and judgment were for the plaintiff and defendants were perpetually enjoined "from erecting or placing an encroachment as defined in Section 660 (b) of the Streets and Highways Code of the State of California in, under or over any portion of plaintiff's highway." Defendants have appealed.

Telephone Road, so-called, is a state highway. It has a pavement 20 feet wide with a 5-foot oiled shoulder. The shed was located somewhat nearer the northeast line than the southwest line of the right of way and between Telephone Road and the drainage ditch. It was 20 feet away from the paved portion of the highway and 15 feet from the outer edge of the shoulder. The only part of the right of way being used by the state was the area within the described roadway. The shed did not constitute an obstruction to the uses that were then being made of the easement, nor perceptibly interfere with the view of users of the highway.

For many years a shed of the same character had been maintained by defendants in another location for use while tomato crops were being harvested and shipped. It was shown by the testimony of the defendants that due to erosion and other surface conditions there was practical necessity for erecting the shed upon the state's right of way. There was no intention to keep it there except during the short harvesting season, and it was removed because defendants no longer had need for it. Their land has now been planted to citrus and there is no foreseeable necessity for future use of the shed.

The principal contentions of the parties may be stated as follows: defendants claim the right as owners of the fee title, subject to the easement, to use the land for any purposes so long as such use does not interfere with the use of the right of way by the public. Specifically, they claim that the maintenance of their shed did not constitute an interference for the reason that it was located 15 feet from the established highway, was on a portion of the land that was not used by others, and did not interfere with the vision of those who had occasion

to use the highway. The state does not claim that the shed interfered in any manner with the free use of the highway by the public, but insists that it nevertheless encroached upon the right of the public to use every part of the right of way at any time without interference; that the fact that there was no interference with the actual uses that were being made of the right of way is immaterial; that the shed as maintained constituted a nuisance subject to abatement in the present action; and that defendants had and could have no right to maintain the shed on the right of way except as the holders of a permit issued by the State Department of Public Works, which permit defendants had not received or applied for. The state does not dispute the right of defendants as owners of the fee to use the land embraced by the right of way in such a manner as will not interfere with the public right. Its contention is that the authority to determine whether a contemplated private use is consistent with the full enjoyment of the easement acquired by the public has been vested by the Legislature in the Department of Public Works, and that this is an exclusive jurisdiction.

We do not doubt the correctness of the state's position. ■ It is a well-settled principle of common law, which has frequently been embodied in statutory form, that a structure maintained upon a public roadway is unlawful (*Commonwealth* v. *King*, 54 Mass. 115; *State* v. *Allen*, 110 S.C. 278 [96 S.E. 401]), and is a nuisance *per se* subject to abatement at the instance of proper authority. (*Vanderhurst* v. *Tholcke*, 113 Cal. 147, 151 [45 P. 266, 35 L.R.A. 267]; *Hill* v. *City of Oxnard*, 46 Cal.App. 624, 627 [189 P. 825]; *Marini* v. *Graham*, 67 Cal. 130, 132 [7 P. 442]; *City of Emporia* v. *Humphrey*, 132 Kan. 682 [297 P. 712, 715]; Elliott on Roads and Streets (4th ed.), § 828, p. 1026.) It is no defense to an action based thereon that the structure is off the traveled part of the highway or that sufficient areas remain to allow public use of the right of way in the accustomed manner. (*Vanderhurst* v. *Tholcke, supra*; *City of Emporia* v. *Humphrey, supra*; *National Sign Co.* v. *Board of Commissioners*, 126 Kan. 81 [266 P. 927]; *Commonwealth* v. *King, supra*; *State* v. *Kean*, 69 N.H. 122 [45 A. 256, 48 L.R.A. 102]; *Robinson* v. *State* (Tex. Cr.App.), 44 S.W. 509, 510.) ■ Where the sole question is whether the maintenance of the structure or obstruction is inconsistent with the full enjoyment of the right of way by the public, the owner of the fee is deemed to possess no greater rights than those who are strangers to the title. (*Bequette* v.

*Patterson*, 104 Cal. 282 [37 P. 917]; *Hall* v. *Kauffman*, 106 Cal. 451 [39 P. 756]; *National Sign Co.* v. *Board of Commissioners, supra*. Cf., *Williams* v. *San Francisco Ry. Co.*, 6 Cal. App. 715, 722 [93 P. 122].) Independently of the statutory law, therefore, it would have been proper to enjoin the defendants from maintaining the shed on the state's right of way. The judgment is supportable upon this ground alone.

■ In accordance with our established distribution of governmental functions which places public streets and highways within municipalities and other political subdivisions under control of public authority, the Streets and Highways Code places the control of the use of state highways in the Department of Public Works. It is within the powers of the department to keep the highways free from encroachments, and to determine what constitutes an encroachment. The term is defined in section 660 as: "[A]ny tower, pole, pole line, pipe, pipe line, fence, billboard, stand or building, or any structure or object of any kind or character not particularly mentioned in this section, which is placed in, under or over any portion of a highway." A highway is defined as including the entire width of the right of way, whether or not actually used for highway purposes. (§ 660.) The Department of Public Works may issue written permits authorizing a permittee to place, change, or renew encroachments upon a public highway. One who places or maintains an encroachment upon a public highway without the authority of a permit is guilty of a misdemeanor. (§ 670.) The obvious purpose of the legislation is to vest in the department the power to determine, upon an application for a permit, whether the intended encroachment is one that would be inimical to the full enjoyment of the public rights in the highway and against the public interest. Such determinations by public authorities, vested with authority to make them, are deemed final and conclusive except where shown to have been the result of capricious or arbitrary action or abuse of discretion. (*Vanderhurst* v. *Tholcke*, 113 Cal. 147, 150 [45 P. 266, 35 L.R.A. 26]; *Laura Vincent Co.* v. *City of Selma*, 43 Cal.App.2d 473, 476 [111 P.2d 17]; *Robinson* v. *Otis*, 30 Cal.App. 769, 771 [159 P. 441]; *City of Emporia* v. *Humphrey, supra*.)

As applicants for a permit, defendants as owners of the fee would have had no greater right than those who were strangers to the title. Any structure or obstruction that would be unlawful if maintained by a stranger to the title would also be unlawful if maintained by the owner of the fee.

If the defendants had been before the court as plaintiffs seeking to restrain the state from interference with the maintenance of their shed, they would have been required to show that they had exhausted their administrative remedies, that is to say, that they had applied for and been denied a permit by the Department of Public Works. (*Metcalf* v. *Los Angeles County,* 24 Cal.2d 267, 269 [148 P.2d 645] ; *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715] ; *Teeter* v. *Los Angeles,* 209 Cal. 685, 687 [290 P. 11].) While the mere institution of the present action by the state does not actually place the defendants in the position they would have been in had they taken action to enjoin the state from interference with their use of the land, in practical effect their position is no different. Under the conditions which existed as pleaded and found by the court, the only successful defense would have been that defendants were the holders of a permit from the Department of Public Works authorizing them to maintain the shed. It is obvious that a judgment in their favor in the trial court, or a reversal of the present judgment, would have the effect of determining that defendants had an absolute right to maintain the shed upon the right of way, from which holding it would necessarily follow that for the Department of Public Works to deny them a permit would be an abuse of discretion. Since that question is indirectly involved in our determination of the appeal, it may be appropriate to say that our views on that point alone would prevent a reversal of the judgment. In our opinion it would have been within the discretion of the department to grant or to deny an application for a permit. Certainly, it would have been a reasonable exercise of discretion to allow the defendant landowners to make temporary use of a portion of the state's right of way, under the conditions of practical necessity shown, for the short period required for the harvesting of their tomato crop. It would be poor policy, and we doubt that it would be the policy of the department at all, to refuse to make an exception in favor of a landowner under the particular conditions shown. On the other hand, it would be in clear violation of the rights and interests of the public to follow a general policy of permitting structures and obstructions of various types to be maintained upon public rights of way. The reasons for this are so clearly apparent that they need not be stated. A line must be drawn between those encroachments that would, and those that would not, infringe upon the rights and be adverse

to the interests of the public, and that line must necessarily be drawn by the Department of Public Works in the proper exercise of its discretion.

Defendants place their chief reliance upon *Colegrove W. Co. v. City of Hollywood,* 151 Cal. 425 [90 P. 1053, 13 L.R.A. N.S. 904]. In that case, the owner of the underlying fee, without complying with an ordinance which required him to obtain a permit, had commenced excavating a public street in order to lay an underground water pipe for the purpose of irrigating his lemon groves planted on both sides of the street. The trial court's decision granting an injunction to restrain the city from interfering with or preventing this work was affirmed by the Supreme Court on the ground that the occupation of the soil by a water pipe was a legitimate use of his land by the owner of the fee, since it was not in conflict with the full enjoyment of the easement granted to the public.

Considered with relation to the present statutory law the decision could mean, at most, that one who found himself confronted by the conditions there considered, and claimed the right there sustained by the court, should be granted a permit by the Department of Public Works to exercise that right. The factual situations are so different that the Colegrove decision cannot be taken as a departure from the well-settled rules referred to above, which have been applied to surface obstruction of public rights of way. Moreover, while we do not question the soundness of that decision, it should be interpreted with relation to the conditions under which roadways were being used in agricultural areas 40 years ago.

Although in the present case the shed had been removed before the trial and there was no threat to replace it, the testimony of defendants clearly disclosed that they claim the right to make similar uses of the land in the future if they have occasion to do so. The judgment should be construed as inapplicable to acts that may be authorized by permit of the Department of Public Works, and as thus construed the granting of injunctive relief was proper.

The judgment is affirmed.

Wood, J., and Vallée, J. pro tem., concurred.