[L. A. No. 24315.   In Bank.   Mar. 22, 1957.]

THE PEOPLE ex rel. Department of Public Works, Appellant, v. FRED J. RUSSELL, Respondent.

George C. Hadley, William E. Fisher, Jr., and Robert F. Carlson for Appellant.

Roger Arnebergh, City Attorney (Los Angeles), Bourke Jones, Assistant City Attorney, Peyton H. Moore, Jr., and Weldon L. Weber, Deputy City Attorneys, as Amici Curiae on behalf of Appellant.

Douglas L. Edmonds and Hodge L. Dolle for Respondent.

SHENK, J.—The plaintiff appeals from those portions of a judgment in condemnation, entered upon a verdict, awarding actual and severance damages for the taking of Parcel 1 as shown by the maps in evidenec and arising out of the construction of an improvement in the county road upon which his property abuts. The property is located in Los Angeles County.

As shown by the maps, the block in which the defendant's property is located fronts on a county road known as Firestone Boulevard and is bounded by Elmcroft and Ringwood Avenues. His property, indicated as Lot 46, does not abut on those streets. A state highway, also known as Firestone Boulevard, runs parallel and contiguous to the county road in an east-west direction. Reconstruction of the state highway was undertaken in order to provide a railway overpass. This resulted in raising the grade of that highway, the taking of a portion of the county road right-of-way for the maintenance of an embankment to support the overpass, the closing of any access to the state highway at Ringwood Avenue, and providing for a new access to that highway at Elmcroft, and it required the relocation of the county road. This proceeding was commenced by the state to obtain an easement for the latter purpose across Parcels 1 and 2 of the defendant's property. It was proposed to reconstruct the county road so as to provide an identical 12-foot width of unimproved parkway adjoining his property, an identical 28-foot width of paved roadway, complete with curbs and gutters, for two-way vehicular traffic, and on the same grade as theretofore existed. The only difference in the proposed improvement was the elimination of a 12-foot unimproved parkway on the opposite side of the road from the defendant's property and the consequent diminution of the total right-of-way width of the county

road from 52 feet to 40 feet. There was no impairment of access from the defendant's property via the county road to the next intersecting street in either direction.

The defendant's property was unimproved at the time of trial. It had been zoned C-1 for limited commercial use in 1950 at the time the subdivision of which it was a part had been accepted. At that time it had been contiguous to the state highway. However, the subdivider had been required by the county, as a condition to its acceptance of the subdivision map, to dedicate 52 feet adjoining the state highway for the construction of the county road to be paved and improved with a roadway 28 feet in width, with curbs and gutters, and a 12-foot unimproved parkway and sidewalk area on either side. The subdivider was also required to dedicate 60-foot easements for the construction of Elmcroft Avenue and Ringwood Avenue, to pave 36 feet on Elmcroft and 40 feet on Ringwood for vehicular use, and to pave Ringwood to the state highway right-of-way line. Defendant, who was then an officer in the subdivision company and who participated in the dedication, later acquired the property in question. He owns the underlying fee in the county road.

The evidence at the trial consisted principally of the testimony of two expert witnesses Ross and Little for the defendant and two expert witnesses Elliott and Smith for the plaintiff, and a view by the jury and the court of the premises after the construction of the improvements.

Witness Little testified that the taking of Parcel 1, which constituted only about 5 per cent of the larger parcel owned by the defendant, did not, in his opinion, reduce the value of the highest and best use to which the remainder of the defendant's property could be put. There was some variance in the opinions of the four witnesses as to the fair market value of this parcel but the parties do not now dispute the amount of the award made by the jury and the judgment, namely, $3,848.64. This leaves for consideration on this appeal the question as to the award of severance damages resulting from the construction of the improvement.

It was the theory of the plaintiff that the proposed improvement did not impair any legally compensable right of the defendant; that all of the rights enjoyed by him in connection with the ownership of his property were appurtenant to the county road and not to the state highway; that there had been no impairment of his rights as an abutter on the county

road to air, light, view, or access; that the diminution in total right-of-way width by the elimination of the unimproved parkway across the road did not constitute a substantial impairment of his right of access to and from that road, and that before the question of the damages to which the defendant might be entitled for impairment of access to the county road could be submitted to the jury, the court was required to determine as a matter of law that there had been a substantial impairment. It was the theory of the defendant, at the outset of the trial, that he was entitled to compensation for the loss of access to the state highway at Ringwood Avenue and because of the raising of the grade of that highway. Pending the ruling of the court evidence was offered to show that his remaining property had been depreciated in value by the construction of improvements in the state highway. After deliberation and near to the close of the trial the court ruled that these were not compensable items of damage and instructed the jury not to consider them in reaching its verdict. No claim was asserted as to any loss of impairment of the defendant's right to air, light or view by the improvement in the county road.

Each of the defendant's witnesses testified that in their opinion the highest and best use of the remainder of his property had been changed from a retail commercial development to a residential development. Witness Ross estimated the severance damages caused by the reconstruction of the county road at $69,373, using as the basis for this estimate the fact that the road in front of the defendant's property was too narrow for servicing commercial property and that by the reduction of the total right-of-way width to 40 feet the road no longer had the potential of an additional paved width, and he considered 40 feet too narrow for the use of vehicles of the type used to serve commercial property. Witness Little estimated the severance damages at $68,034, using as the basis for his estimate the erection of the state highway ramp, the closing of the Ringwood Avenue access, and the inadequacy of a 40-foot street to service commercial property. He made no breakdown of these factors in his computation. Two of these were later held by the court to be non-compensable. When he was asked to consider only the diminution in right-of-way width in estimating the severance damages, he did not change the amount of his estimate. Yet when asked if he thought that the closing of Ringwood

Avenue was an additional reason to persuade a present buyer that the property was no longer commercial property but residential property, he replied ''I don't think any buyer would buy property for commercial property if Ringwood Avenue was closed off.''

It was the contention of the defendant throughout the trial that the loss sustained by him was not a question of access but of changing the highest and best use of his property by the narrowing of the right-of-way, the original width of which had been established by the local authorities as being necessary for serving this commercially-zoned property and in which original width he owned the underlying fee. The trial court properly treated this as a question of access to the county road. However it refused to determine as a matter of law that there had been no substantial impairment of this right, leaving this determination to the jury as a question of fact. The jury was instructed that the defendant had a private right in the county road of reasonable access by such modes of conveyance and travel as are appropriate to the highway, and to a road of a width which was adequate to serve his property, considering the uses to which it was adapted and available. If the jury should find in accordance with this definition that the defendant's right of access had not been substantially impaired, it was instructed to find that the defendant had suffered no compensable damage by reason thereof. One of the jurors asked whether the landowner has the right to say what can be done with that right-of-way for the use of his own property, whether he could have paved those 12 feet on the opposite side of the road, or did that strip of land belong to the county and had to be reserved for curbs or sidewalks. After a colloquy between court and counsel, he was informed that ''the area dedicated to the County of Los Angeles for road purposes may be improved and used for general road and street purposes which includes pavement, sidewalk area, curbs, parkway, which ultimate improvement is determined by the County of Los Angeles according to need of the surrounding area.'' The jury returned a verdict of $33,499.83 for the severance damages for impairment of the defendant's right of access in and to this county road.

The plaintiff urges that the trial court should have determined as a matter of law from the facts presented that there had been no substantial impairment of defendant's right of access to this road; and that the evidence does not disclose any legally compensable injury suffered by the defendant from

the county road improvement. The defendant urges that by its judgment on the verdict the court determined that there was substantial impairment as a matter of law, and that substantial evidence supports the judgment.

In an eminent domain proceeding the amount of compensation is to be determined by the jury. (Const., art. I, § 14.) All other issues are to be tried by the court, and if it does not make special findings on those issues they are implicit in the verdict awarding compensation. (*People* v. *Ricciardi*, 23 Cal.2d 390, 402 [144 P.2d 799] and cases cited.) The verdict should stand if there is substantial evidence to support the implied finding.

An abutter's easement of access arises as a matter of law (*Rose* v. *State*, 19 Cal.2d 713 [123 P.2d 505]). It is a property right enjoyed by the abutter as an incident of his ownership of property, and is separate and distinct from the right of the general public in and to the street. While certain general rules have been set forth in the various decisions which have considered the nature and scope of this right, each case must be considered upon its own facts. The right of access has been defined as extending to a use of the road for purposes of ingress and egress to his property by such modes of conveyance and travel as are appropriate to the highway and in such manner as is customary or reasonable. (*Rose* v. *State, supra,* 19 Cal.2d 713, 728.) It is more extensive than a mere opportunity to go into the street immediately in front of one's property. (*Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818].) However it does not extend beyond access to the next intersection at either end of the street upon which the property abuts. (*Beckham* v. *City of Stockton,* 64 Cal.App.2d 487 [149 P.2d 296].) Any inconveniences which may be suffered after such intersection is reached do not impair the easement but are inconveniences suffered by him as a member of the public. Highway changes causing diversion of traffic or circuity of travel beyond an intersecting street are not compensable. (*People* v. *Ricciardi, supra,* 23 Cal.2d 390, 401-402) even though the value of non-abutting property may depreciate as a consequence thereof.

In those cases in which substantial impairment has been found as a matter of law from a reduction in width of a paved street or sidewalk area different factual situations were presented. In *Rose* v. *State, supra,* 19 Cal.2d 713, the elimination of a grade crossing and the construction of a subway left a

14-foot lane for two-way vehicular traffic and a 3-foot sidewalk in front of industrial property. In *Eachus* v. *City of Los Angeles*, 130 Cal. 492 [62 P. 829, 80 Am.St.Rep. 147], the construction of a street improvement left a 10-foot strip for vehicular use in front of the plaintiff's property. In *Lane* v. *San Diego Elec. Ry. Co.*, 208 Cal. 29 [280 P. 109], an improvement was constructed so close to the plaintiff's premises that a vehicle could not be parked in front of it while a streetcar passed by. In *McCandless* v. *City of Los Angeles*, 214 Cal. 67 [4 P.2d 139], an improvement was constructed 7 feet from the plaintiff's property line. These may be readily distinguished from the present case where the parkway adjoining the defendant's property and the paved street area for vehicular traffic were of exactly the same width and grade and bore the same relationship to the defendant's property as theretofore. Any inconvenience to the use of this property for commercial purpose because of these widths was no greater as a result of the improvement. ■ Much of the defendant's argument is devoted to a discussion of results stemming from the improvements in the state highway. His property does not abut thereon and the court properly ruled that these matters are not compensable.

■ For the purpose of determining severance damages it is immaterial whether the defendant owns the underlying fee in the county road or has only an easement therein by reason of his ownership of abutting property. (*Eachus* v. *Los Angeles etc. Ry. Co.*, 103 Cal. 614, 618 [37 P. 750, 42 Am.St.Rep. 149].) The entire right-of-way had been dedicated for county road purposes. The determination of the particular road purposes to which the opposite parkway should be put was within the discretion of the county. The defendant could not have required the county to put it to any particular road use nor could he have used that strip for any special purpose of his own inconsistent with the full enjoyment of the right of way by the public. (*Gurnsey* v. *Northern Calif. Power Co.*, 160 Cal. 699, 705 [117 P. 906, 36 L.R.A.N.S. 185]; *Colegrove Water Co.* v. *City of Hollywood*, 151 Cal. 425, 429-430 [90 P. 1053, 13 L.R.A.N.S. 904]; *Hayes* v. *Handley*, 182 Cal. 273, 282 [187 P. 952]; *Airways Water Co.* v. *County of Los Angeles*, 106 Cal.App.2d 787, 790 [236 P.2d 199]; *People* v. *Henderson*, 85 Cal.App.2d 653, 657 [194 P.2d 91].) ■ With changing conditions of travel, a city or a county has the right to adapt and appropriate its highways from time to time to such uses as are within the

terms of the dedication and are conducive to the enjoyment by the public of the highway. (*Wattson* v. *Eldridge,* 207 Cal. 314 [278 P. 236] ; *Airways Water Co.* v. *County of Los Angeles, supra,* 106 Cal.App.2d 787, 790.) ▇ The mere possibility that the opposite parkway might have been devoted to the use of vehicular traffic, should the county so determine, was too speculative and remote to be the basis of an award of damages. (*Cf. City of Los Angeles* v. *Geiger,* 94 Cal.App.2d 180, 192 [210 P.2d 717].)

▇ In the proper exercise of its police power in the regulation of traffic, a state or county may do many things which are not compensable to an abutting property owner, such as constructing a traffic island, placing permanent dividing strips which deprive an abutter of direct access to the opposite side of the highway, painting double white lines on the highway, or designating the entire street as a one-way street. (*McDonald* v. *State,* 130 Cal.App.2d 793, 799 [279 P.2d 777] ; *People* v. *Sayig,* 101 Cal.App.2d 890 [226 P.2d 702] ; *Holman* v. *State,* 97 Cal.App.2d 237 [217 P.2d 448] ; *Beckham* v. *City of Stockton,* 64 Cal.App.2d 487 [149 P.2d 296].) Amici curiae urge that the use of the parkway as a traffic separation strip between the state highway and the county road is proper in the control of traffic, and as such presents no valid claim for damages. Under the factual situation here presented this contention is sustained.

No substantial impairment of the defendant's right of access to the county road is disclosed by the evidence and the court should have instructed the jury to that effect. Any finding of the court to the contrary implied from the fact that the question of severance damages was submitted to the jury is not supported by the evidence.

In view of what has been said other contentions raised on appeal need not be discussed.

The judgment awarding damages for the taking of Parcel 1 is affirmed. The judgment is modified by striking therefrom the award for severance damages for the taking of Parcel 1. As so modified the judgment is affirmed; the defendant to recover costs on appeal.

Gibson, C. J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—In my view the opinion prepared for the District Court of Appeal by Justice Fourt and concurred in by Presiding Justice White and Justice Doran (reported in

(Cal.App.) 299 P.2d 920) adequately discusses and correctly resolves the questions presented on this appeal. For the reasons therein stated I would affirm the judgment of the trial court.

McComb, J., concurred.

CARTER, J.—I dissent.

When this case was before the District Court of Appeal, Second Appellate District, Division One, an opinion was prepared by Mr. Justice Fourt affirming the judgment of the trial court. This opinion was concurred in by Mr. Presiding Justice White and by Mr. Justice Doran. The views expressed in said opinion are in accord with my concept of the law on this subject and I adopt said opinion as my dissenting opinion from the majority opinion herein.

"This is an appeal by the plaintiff from a judgment in a condemnation action wherein the defendant was awarded severance damages in the sum of $33,499.83.

"The action was brought to acquire an easement for public road and highway purposes over property described in the complaint. The complaint alleges that the parcel to be taken is a part of a larger parcel and the prayer asks that damages incidental to the taking be ascertained and assessed. The answer admits that the parcel to be taken is only a part of a larger parcel and alleges that the taking and the construction of the improvement cause a damage. The issue of damages is therefore joined by the pleadings of the parties.

"The parcel to be taken was unimproved, about 287 feet in length and varied in width from 6 feet to 28 feet and was about 5,064 square feet in area. That parcel was a part of a larger parcel all owned by the defendant. The larger parcel was generally rectangular in shape with an area of about 105,000 square feet. The entire property in question was zoned for commercial usage, fronting and abutting upon the north side of a county road called Firestone Boulevard, hereinafter referred to as the County road. The County road consisted of a dedicated right of way 52 feet in width, of which the center 28 feet had been paved allowing for vehicular and other travel in both directions and complete with curbs and gutters on each side. The County road ran parallel to, and adjoined on the south side, State Highway Route Number 174, also known as Firestone Boulevard, hereinafter referred to as the State highway. There was no connection or paved

crossover between the State highway and the County road along their common boundary. Figure 1 illustrates the 'before' position and measurements of the defendant's property and its relationship to the roadways. Figure 2 illustrates the 'after' position and measurements of the defendant's property and its relationship to the roadways. (See *post*, pages 200 and 201.)

"The relocation of the County road was necessitated by the widening of the State highway for the construction of a railroad overpass. The reconstruction of the County road resulted in the elimination of a 12-foot strip on the south side of the County road. In other words, the County road was reduced from 52 feet to 40 feet in width, or a reduction of about twenty-three (23) per cent, although the paved portion of the road remained the same. In addition, a paved connection between the County road and the State highway was constructed where Elmcroft Avenue and the State highway connect.

"The evidence indicated that respondent's damages were not based upon any loss of light, air or view with respect to the County road, thereby resolving the matter to the question of loss or impairment of access.

"Appellant asserts that the sole question presented by this appeal is whether the trial court erred in not ruling as a matter of law that respondent's easement of access in and to the abutting County road had not been substantially impaired. It is appellant's contention that since the uncontradicted evidence showed that the road had been reconstructed in exactly the same relationship to the land as to the grade, width of roadway, and intervening parkway strip, the only difference being the elimination of an unimproved 12 foot wide strip on the other side of the County road separating and dividing that road from a heavily traveled State highway, there was no substantial loss or impairment of respondent's right of access.

"The property in question was a part of a subdivision known as Tract Number 16767, apparently developed in about 1950. The political subdivision having control of subdivisions at that time imposed certain conditions and requirements on the subdividers, among such conditions and requirements being that a road (the County road here) 52 feet in width be dedicated to the county; that, at the property owners' expense, it be paved with a roadway 28 feet in width, that it be provided with curbs and gutters and that a 12 foot parkway

Figure 1—Before Construction.

and sidewalk area be provided on each side of the paved and curbed roadway. The subdivision map was recorded on October 31, 1950. Apparently, the subdividers complied substantially with all of the conditions and requirements made by the political subdivisions concerned with the property.

"As stated in *Bacich* v. *Board of Control,* 23 Cal.2d 343, at pages 349-350 [144 P.2d 818] : 'It has long been recognized in this state and elsewhere that an owner of property

Figure 2—After Construction.

abutting upon a public street has a property right in the nature of an easement in the street which is appurtenant to his abutting property and which is his private right, as distinguished from his right as a member of the public. That right has been described as an easement of ingress and egress to and from his property or, generally, the right of access over the street to and from his property, and compensation must be given for an impairment thereof.'

"Also, in *People* v. *Ricciardi,* 23 Cal.2d 390, the court stated, at page 397 [144 P.2d 799] : 'The courts of this state, from time immemorial and in cases too numerous to mention, have declared and enforced the abutting property owner's right to a free and convenient use of and access to the highway on which his property abuts. (Citing cases.) It was declared in the case of *Eachus* v. *Los Angeles etc. Ry. Co., supra,* 103 Cal. 614 [37 P. 570, 42 Am.St.Rep. 149], at p. 617, that this right of ingress and egress attaches to the lot and is a right of property as fully as is the lot itself and any act by which that easement is destroyed or substantially impaired for the benefit of the public, is a damage to the lot itself, within the meaning of the constitutional provision under which the owner is entitled to compensation.

" 'It is also the settled law that "An abutting owner has two kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the highway, and which are not common to the public generally ; . . . An abutting landowner on a public highway has a special right of easement and user in the public road for access purposes, and this is a property right which cannot be damaged or taken away from him without due compensation. [Citing cases.]" (*Lane* v. *San Diego Elec. Ry. Co.,* 208 Cal. 29, 33 [280 P. 109].)'

"In *Rose* v. *State,* 19 Cal.2d 713, at pages 727-728 [123 P.2d 505], the court said: 'The abutting owner's easement of access arises as a matter of law . . . and its nature and extent have been set forth in the numerous decisions which have considered the question. Thus, it is established that the easement of access is a matter of law peculiar to the individual owner, and an unreasonable interference with such an easement is an injury necessarily different from the injury suffered by the general public. . . . It is an easement in the public highway upon which his land fronts. (Citing cases.) The right extends to a use of the highway for purposes of ingress and egress to his property by such modes of conveyance and travel as are appropriate to the highway and in such manner as is customary or reasonable. (See Lewis, Eminent Domain (3d ed.), p. 190.)'

"The appellant here contends that the right of access does not extend to the full width of the dedicated right-of-way, but only to the paved portion thereof and that therefore there was no substantial loss or impairment of respondent's right

of access since a duplicate paved portion of equal size has been provided.

"In support of its contentions appellant cites *Rose* v. *State, supra; Beckham* v. *City of Stockton,* 64 Cal.App.2d 487 [149 P.2d 296]; *McDonald* v. *State,* 130 Cal.App.2d 793 [279 P.2d 777]; *Brown* v. *Board of Supervisors,* 124 Cal. 274 [57 P. 82], and *Bigley* v. *Nunan,* 53 Cal. 403.

"All of the cited cases are distinguishable from the case now before us. In the Beckham case the complainant owned property, no part of which was taken for construction, and which was beyond the intersection and within the first block from the street in question. In the construction an underpass was made and as a result thereof claimants could no longer go directly from their property across the next intersecting street and to the downtown area. The court held that mere inconvenience and circuity of travel beyond an intersecting street resulting from the construction of an improvement therein do not furnish a basis for recovery of damages by landowners whose properties abut on a street which intersects the street on which the improvement is constructed; that in order for the landowner to recover there must be an infringement of some right which he possesses in connection with his property; and such property right is that of reasonable use of the street fronting the property in either direction to the next intersection. Such right the plaintiffs still had.

"In the McDonald case, plaintiffs claimed damages because they formerly passed directly across the county road, upon which their property fronted, to .and into a state highway which lay next to and parallel with the county road. The state had constructed a wall 11 feet inside of the county road thus making direct passage to the state highway impossible, and necessitating travel on the county road to the next intersecting street before the state highway could be entered. A demurrer to the second amended complaint was sustained because the pleadings showed that appellants did not own property abutting on the state highway and did not have direct access thereto. The appellate court stated, at page 797 : 'However, appellants do not complain of the fact that the wall was placed within the original surface area of the county road rather than upon its common boundary with the state highway. They claim only that their abutters' rights in the state highway have been damaged. . . . Thus, the real issue presented is whether or not the appellants, upon the construction of the state highway, *ipso facto* acquired a right to have

no barrier erected between said state highway and that portion of Plumas Street (county road) upon which their properties abutted.'

"*Brown* v. *Board of Supervisors, supra,* 124 Cal. 274, merely holds that the narrowing of a street is not *ipso facto* an impairment of the right of access. The board of supervisors of the city and county of San Francisco passed an order declaring the northerly 31 feet of Turk Street to be closed and vacated. The owner of the lands abutting upon the southerly side of the street instituted proceedings for a review of the action of the board and a judgment anulling the order upon the ground that in adopting it the board acted in excess of its jurisdiction. The court held that the act of the board was a legislative act performed in the exercise of a discretionary power intrusted to them as a legislative body and that it was not the exercise of any judicial function which may be reviewed upon certiorari. In answer to the contention that the board had no jurisdiction to adopt the order without at the same time providing for an assessment of damage that would be sustained thereby and providing for its payment, the court stated, at pages 280-281: 'The property which an abutting owner has in the street in front of his land is the right of access and of light and air, and for an infringement of these rights he is entitled to compensation. . . . The appellants herein do not, however, claim that the reduction in the width of the street will in any respect interfere with their enjoyment of light and air, or that access to their lots is in any degree impaired. . . . The damage which the appellants may sustain by reason of a diminution in value of their lands is not damage for which they are entitled to compensation. (Citing cases.)'

"*Bigley* v. *Nunan, supra,* 53 Cal. 403, was not a condemnation proceeding but was an action to abate a nuisance caused by the erection of a fence in the highway in front of plaintiff's property, and for damages. The access from the plaintiff's lot to the street had not been cut off or impeded. The court held that if plaintiff and his immediate neighbors had more occasion to pass through the street than the public at large, this was an inconvenience in degree only and was not an injury in kind different from that sustained by the public; that the nuisance may be abated or removed, and to give damages on account of the decreased value of the land would be to give damages for all the injury the premises would ever sustain, which would be clearly wrong.

"In a majority of the cases in other jurisdictions the right of an owner of property to compensation for damages suffered by the narrowing of a street in front of his premises has been sustained, even where the portion vacated is on the opposite side of the street. (18 Am.Jur. 860; 49 A.L.R. 1255.) In *City of Tulsa* v. *Hindman,* 128 Okla. 169 [261 P. 910, 55 A.L.R. 891], it was held that where a city widens or opens a street for automobile and motor-truck traffic to its entire width, thereby consuming all space theretofore assigned and set apart for sidewalks or foot roads, it is liable to abutting property owners for any consequential damages resulting to such property.

"In *Fry* v. *O'Leary,* 141 Wash. 465 [252 P. 111, 49 A.L.R. 1249], the south 13 feet of a street were vacated over the protests of the landowners whose property abutted the opposite side. The court in holding that the resulting damage was compensable, stated, at page 113 [252 P.] : 'We think it also clear under the uniform weight of authority that one who is an abutting property owner upon a street or alley, any portion or the whole of which is sought to be vacated, has a special right and a vested interest in the right to use the whole of the street for ingress and egress, light, view, and air, and, if any damages are suffered by such an owner, compensation is recoverable therefor. It follows therefore, that if appellants' light, air, view, or access is materially diminished, as alleged in the complaint, they are entitled to have the same passed upon by a jury regularly impaneled to determine the amount thereof. *Ridgway* v. *City of Osceola,* 139 Iowa 590 [117 N.W. 974].

" 'Respondents contend that the vested interest of an abutting property owner in a street extends only to the middle of the street, and that therefore appellants are not abutting property owners as to the 13 feet vacated, which is across the street. But this position is untenable. Carried to its logical conclusion, the council could vacate all the street opposite appellants' property, leaving but a 30-foot street, and still appellants have no cause for complaint because not abutting owners. Yet there can be no doubt that, under most circumstances, property on a street only 30 feet in width would not be as valuable as on one twice as wide, for there would be only half as much space for light, air, view, and means of access. An abutting property owner's vested interest is to the full width of the street in front of his land, and he is entitled to

use the whole thereof for egress and ingress, light, air, and view, and for any substantial or material diminution of any of these rights he is entitled to recover in damages.'

"Appellant further contends that the trial court, as a matter of law, must make a finding as to whether the abutter's rights of access have been substantially impaired, prior to submitting the matter to the jury. It is true that it is within the province of the trial court, and not the jury, to pass upon the question whether under the facts presented the abutting landowner's right of access will be substantially impaired. However, this the trial court did when it ruled on the admission of evidence and in its instructions to the jury. Also, if the court does not make special findings on the issue its findings thereon are implicit in the verdict awarding compensation. (*People* v. *Ricciardi, supra,* 23 Cal.2d 390.)

"Two witnesses testified for respondent and each stated that it was his opinion that there was a damage to the remaining parcel. One witness stated that it was his opinion that such damage was $69,373, and the other testified that it was his opinion the damage was $68,034. Each testified that by reason of the relocation and construction of the county road the highest and best use of respondent's property had changed from a retail commercial development to a residential development. The court and jury viewed the property, the area and the constructed improvement. The trial judge was in a position to and, in our opinion, he did fairly exercise his discretionary power. His view of the property and of the construction by the state is independent evidence to support the determination or finding implicit in the verdict that an impairment of access existed. (*Neel* v. *Mannings, Inc.*, 19 Cal.2d 647, 654 [122 P.2d 576]; *Wheeler* v. *Gregg*, 90 Cal. App.2d 348, 366 [203 P.2d 37]; *City of Oakland* v. *Adams*, 37 Cal.App. 614, 617 [174 P. 947]; *Hatton* v. *Gregg*, 4 Cal. App. 537, 540-541 [88 P. 592].) In the case of *County of San Diego* v. *Bank of America*, 135 Cal.App.2d 143, at page 149 [286 P.2d 880], the court stated as follows: 'It is the rule in California that in a condemnation action, in absence of a showing of passion or prejudice, the finding of a jury when supported by substantial evidence will not be set aside on appeal. (Citing cases.)'

"Also, in *Rose* v. *State, supra,* 19 Cal.2d 713, at pages 728-729, the court said: 'It is well settled that where there is evidence to support a finding that substantial and unreasonable

interference with the land-owner's easement of access or right of ingress and egress has been caused as the result of an obstruction in the street or highway on which his property abuts, an appellate court will not say as a matter of law that such finding is erroneous. (*O'Connor* v. *Southern Pac. Co.*, 122 Cal. 681 [55 P. 688]; *Smith* v. *Southern Pac. Co.*, 146 Cal. 164 [79 P. 868, 106 Am.St.Rep. 17]; *Fairchild* v. *Oakland & Bay Shore Ry. Co.*, 176 Cal. 629 [169 P. 388].)

" 'The issues before the trial court in the case at bar were, whether plaintiffs' rights of access to Jackson Street was substantially and unreasonably impaired by the construction of the subway, and if so, the amount of damage suffered as the result of such interference. These matters are for the trier of the facts and only where the evidence does not support a finding of substantial and unreasonable interference should the court decide the issue as a matter of law.'

"The case of *Anderson* v. *State*, 61 Cal.App.2d 140 [142 P.2d 88], holds that the view alone will support a verdict if it is within the range of testimony. The trial court heard the testimony of all witnesses, received and examined all exhibits, viewed the property, and reweighed the evidence before denying appellant's motion for new trial. (See *People* v. *Adamson*, 118 Cal.App.2d 714, 725 [258 P.2d 1020].)

"Appellant further contends that there were errors of law committed which were prejudicial to it. It is claimed that the testimony of the witness Little for the respondent should have been stricken. The substance of the testimony of the witness was that before the construction the remaining property was adapted to commercial activities and that after the reduction of the street the remaining property was no longer commercial; that the county road is now too narrow to service a commercial development and that the remaining property cannot now be utilized for commercial activities and is therefore less valuable. The testimony was proper and the motion to strike it was properly denied. Substantially the same situation prevailed as to the testimony of respondent's witness Ross.

"It is our conclusion that there was ample evidence to support the judgment and there was no prejudicial error to appellant."

Respondent's petition for a rehearing was denied April 17, 1957. Carter, J., Schauer, J., and McComb, J., were of the opinion that the petition should be granted.